**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NICHOLAS MARTIN, on behalf of himself and others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>CREDIT PROTECTION ASSOCIATION, LP,<br><br>                Defendant. | Judge Hibbler<br><br>Case 1:11-cv-6828 |

**MOTION FOR JUDGMENT ON THE PLEADINGS OR,
IN THE ALTERNATIVE, TO STRIKE THE CLASS DEFINITION**

      Defendant, CREDIT PROTECTION ASSOCIATION, LP ("defendant" or "CPA"), by its attorneys David M. Schultz and Justin M. Penn, and pursuant to Federal Rule of Civil Procedure 12(c), respectfully requests that this Court grant judgment in its favor on the plaintiff's Complaint – Class Action, and in support thereof, states as follows:

**Introduction and Summary of Pleadings**

      Plaintiff, Nicholas Martin, filed this class action asserting that CPA called his cell phone without his permission in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq. ("TCPA"). The crux of plaintiff's claims are that CPA did not have plaintiff's consent to call his cell phone. DE 1, ¶11; DE 11, ¶11. CPA proved in its Answer that plaintiff provided his cell number to Comcast. DE 1, ¶11; DE 11, ¶11. By way of background, CPA called the plaintiff seeking to retrieve a piece of equipment that Comcast provided to the plaintiff. Comcast asked CPA to call the plaintiff in an effort to get the equipment back from the plaintiff.

      CPA attached[1] to its Answer a copy of the work order that the plaintiff signed when Comcast set up his service and installed the equipment. The phone number he gave to Comcast is

---

[1] As explained more fully in the Legal Standard section, this Court can consider the pleadings and attachments thereto, including attachments to the Answer, in ruling on a Rule 12(c) motion. *See, gen., Langone v. Miller*, 631 F.Supp.2d 1067 (N.D.Ill. 2009). Moreover, the type of exhibits that may be considered is broadly interpreted, including contracts for services. *Id.* at 1070.

130223765

the same number he now asserts CPA called in violation of the TCPA. The law is clear – a individual who provides "a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC Declaratory Ruling No. 07-232, 23 FCC Rcd. 559 ¶ 9-10.

Even assuming CPA was not entitled to judgment, the Court still should strike the class allegations. The class definition conditions inclusion in the class upon CPA's inability to provide the very evidence it has provided in this case – that the plaintiff consented to receive calls on his cell phone. DE 1, ¶ 18; DE 11, ¶ 18. Clearly the plaintiff is not in the class he seeks to represent, and the class definition (and class allegations) should be stricken as plaintiff obviously cannot represent that class of individuals. Moreover, the class definition is an improper fail-safe class definition because it is a class which would be bound only by a judgment favorable to plaintiff, but not by an adverse judgment.

## **Argument**

### **Standard of Review**

Under Rule 12(c), "a party can move for judgment on the pleadings after the filing of the complaint and answer." *Supreme Laundry Serv., LLC v. Hartford Cas. Ins., Co.*, 521 F.3d 743, 746 (7th Cir. 2008). A motion for judgment on the pleadings should be granted "when it appears beyond a doubt that the plaintiff cannot prove any set of facts to support a claim for relief and the moving party demonstrates that there are no material issue of fact to be resolved." *Id.* The Seventh Circuit has explained that, for purposes of a Rule 12(c) motion, the pleadings consist of "the complaint, the answer, and any written instruments attached as exhibits." *Northern Indiana Gun Shows v. City of South*

130223765

*Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998). See also Fed.R.Civ.P. 10(c) [2] ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.") "Written instrument" is construed broadly to include such things as affidavits, letters, contracts, and loan documents. *Northern Indiana Gun Shows*, 163 F.3d at 453; *Langone v. Miller*, 631 F.Supp.2d 1067, 1070 (N.D.Ill. 2009).

> I. **CPA is entitled to judgment on the pleadings because the pleadings and exhibits demonstrate that the plaintiff provided express consent to have his cell number called.**
>
> a) **Because plaintiff provided his number to Comcast, he consented to receive CPA's collection calls on the number provided, and the calls comply with the TCPA.**

Plaintiff alleges that "CPA did not have plaintiff's consent to call plaintiff's cellular telephone" as the basis for his purported TCPA violation. DE 1, ¶11; DE11, ¶11. The TCPA prohibits making automated calls to a number assigned to a cell phone only if such calls are made without the called party's "prior express consent." § 227(b)(1) makes it unlawful for a person:

> (A) to make any call (<u>other than a call made for emergency purposes or made with the prior express consent of the called party</u>) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> …
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

The prohibition does not apply if the called party consented to receive auto-dialed and prerecorded message calls on his cell phone. The FCC has clarified what constitutes "express

---

[2] Although this motion is brought pursuant to Rule 12(c), defendants are permitted to attach documents to motions brought pursuant to Rule 12(b)(6) as well. The Seventh Circuit has explained that the exception allowing Courts to consider matter in addition to the complaint "has been thought to follow from Rule 10(c); the concern is that, were it not for the exception, the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *see also, Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321, 324 F.3 (7th Cir. 1997) ("We can, of course, also consider the bills of lading and the charter party because, although Duferco failed to attach these vital documents to its complaint, Tomazos attached them to its motion to dismiss").

3

consent" as a matter of law under the statute pursuant to its authority to create rules and regulations implementing the TCPA. *See* 47 U.S.C. § 227(b)(2). The FCC issued a declaratory order which states that:

> Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.
>
> Calls placed by a third party collector on behalf of that creditor [to whom prior express consent was provided] are treated as if the creditor itself placed the call.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC Declaratory Ruling No. 07-232, 23 FCC Rcd. 559 ¶ 9-10.

In reaching this conclusion, the FCC looked to the legislative history of the TCPA. The House Report on the bill that became § 227 states that "[t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications." No. 07-232 ¶ 9, citing to House Report, 102-317, 1st Sess., 102nd Cong. (1991) at 17.

The FCC's original rulemaking under the TCPA found that a person who voluntarily releases his phone number to another gives consent to be contacted at the number:

> persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.

*In re Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991,* 7 FCC Rcd. 8752, 8769 ¶ 31 (1992). This FCC final order is binding on this Court under the Hobbs Act and cannot be challenged by the plaintiff in the District Court. See 28 U.S.C. §2342(1); 47 U.S.C. §402(a); *CE Design, Ltd. V. Prism Bus. Media, Inc.*, 606 F.3d 443, 446-50 (7th Cir. 2010). This Court is required to apply the FCC's Orders to the facts. *CE Design*, 606 F.3d at 446, n. 3.

4

Under the FCC ruling, when an individual provides his cell phone number to a creditor, he consents to receive auto-dialed calls on his cell phone. Individuals acting on behalf of the creditor may call that number using an automatic telephone dialing system or prerecorded message without violating the TCPA. At the time plaintiff set up his service, he provided Comcast his cell number[3]. DE 11, ¶11, Ex. A. The cell number was included on the work order that the plaintiff signed. DE 11. The plaintiff gave Comcast his cell number, which was listed as his home phone number on the work order. DE 11, ¶11, Ex. A. Plaintiff signed this work order. DE 11, ¶11, Ex. A. Comcast gave the number to CPA when it forwarded plaintiff's account for CPA to call and seek retrieval of the equipment. The number CPA called is the same number plaintiff provided to Comcast. Compare DE 1, ¶4 with DE 11, Ex. A. CPA's calls therefore complied with the TCPA, § 227(b)(1)(A)(iii) because plaintiff consented to receive the calls as promulgated by the FCC.

The FCC ruling explains in no uncertain terms that by providing his cell number to Comcast, the creditor, plaintiff provided express consent allowing calls to be made on behalf of Comcast on his cell phone. The FCC ruling is unqualified in its scope. The FCC has found "that autodialed and prerecorded message **calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party**, [and] we clarify that **such calls are permissible**." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC Declaratory Ruling No. 07-232, 23 FCC Rcd. 559 ¶ 9-10 (emphasis added). The FCC further explained that "**calls to wireless numbers that are provided by the called party to a creditor** in connection with an existing debt **are permissible** as calls made with the 'prior express consent' of the called party . . . . *Id.* at 568, ¶ 17 (emphasis added).

---

[3] The exhibit attached to CPA's answer is redacted. CPA's counsel and counsel for the plaintiff discussed the number that plaintiff claims was called, and confirmed that the number provided on the Comcast work order is the number plaintiff claims was called. In addition, the number identified in plaintiff's discovery requests is the same number provided on the signed work order attached to CPA's Answer.

These FCC pronouncements make clear that a company like CPA can lawfully call a cell number for a debtor if the debtor provided the number to the creditor. That is precisely what occurred here[4]. The FCC could have qualified its rulings, provided limits or conditions on the scope of the express consent, or mandated a method by which to revoke the consent. It did not. This Court cannot limit or modify the express consent given. District Courts are not the proper forum in which to challenge the content and scope of an FCC order. *CE Design*, 606 F.3d at 450. District Courts are instead bound to apply it to the facts of the case. *Id.* at 466, n. 3.

Plaintiff's TCPA claim suffers from the same shortcomings that doomed the TCPA claims where plaintiff's received calls from debt collectors in *Starkey v. Firstsource Advantage, LLC,* 2010 WL 2541756, *3 (W.D. N.Y. 2010), and *Greene v. DirecTV, Inc.*, 2010 WL 4628734, *3 (N.D. Ill. 2010) (Kocoras, J.). In *Starkey*, just as here, the debtor gave her cell phone number to her creditor, Adelphia, when she opened her cable television account, and the auto-dialed collection calls that Adelphia's debt collector made to that number complied with the TCPA as a matter of law. *Id.*, *Accord Cunningham v. Credit Management, L.P.,* 2010 WL 3791104, *5 (N.D. Tex. 2010)(holding that by providing number to Time Warner cable company, the plaintiff consented to receiving calls on that phone number, and entering judgment on TCPA claim).

In *Greene,* the plaintiff placed a fraud alert message in her credit reports which stated that she was the victim of identity theft and that potential creditors should verify her identity by calling her cell phone number before they opened credit using her personal information. A third party contacted DirecTV about opening a satellite television account using the plaintiff's Social Security number. When DirecTV pulled the plaintiff's credit report, it received her fraud alert. DirecTV's vendor then called the plaintiff's cell phone and played a prerecorded message asking whether she

---

[4] It is of no consequence that CPA was seeking retrieval of equipment as opposed to collecting money. Comcast is still the creditor of the plaintiff.

6

had ordered satellite television service from DirecTV. In response, the plaintiff filed suit, alleging that the prerecorded message call violated the TCPA because it was made without her consent. The court entered summary judgment for defendants. The plaintiff had consented to be contacted by potential creditors on her cell phone number when she voluntarily released her number to potential creditors through the fraud alert message she placed in her credit reports.

Similarly, in this case, plaintiff's TCPA claim fails as because he provided express consent to receive CPA's calls by releasing his number to his creditor, Comcast. This express consent is by operation of law, as provided by the FCC. Because plaintiff provided his number to Comcast, he consented to receive the calls that CPA made in an effort to retrieve his equipment, and judgment on the TCPA claim should be entered in CPA's favor.

> II. **If this court does not grant judgment to CPA, it should strike plaintiff's class action allegations that are based upon the class definition because that class is an improper fail-safe class, and plaintiff cannot represent that class of individuals.**

Where a complaint demonstrates that a class action cannot be maintained, a defendant may move to strike class allegations, even prior to discovery. *Sanders v. Apple, Inc.,* 672 F.Supp.2d 978, 989-90 (N.D.Cal. 2009); *Hovsepian v. Apple, Inc.,* 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009); *see Thompson v. Merck & Co.,* 2004 WL 62710, at *2 (E.D.Pa. Jan 6, 2004). The courts have authority to grant such a motion under Fed.R.Civ.P. 12(f), 23(c)(1)(A), and 23(d)(4). *Sanders,* 672 F.Supp.2d at 990-91; *Thompson,* 2004 WL 62710, at *2.

Plaintiff brings the suit based upon a class defined as (DE 1, ¶18):

> All persons with Illinois and Indiana phone numbers, who defendant or some person on its behalf called on their cell phone using a device that has the capacity to dial numbers without human intervention, where defendant played a message that had been recorded ahead of time, where defendant cannot show that it had the consent of the called party to make such a call, where any call was made between and including a date four years prior to the filing of this action.

130223765

The putative class definition should be stricken for two reasons: (1) it sets forth a class definition that does not include the plaintiff, and (2) it sets forth an improper "fail-safe" class.

As to the first point, the plaintiff seeks to represent a class of individuals for whom CPA "cannot show that it had the consent of the called party to make such a call." DE 1, ¶18. Obviously, the plaintiff is not in this class of individuals as demonstrated by Exhibit A to the Answer. CPA has shown that plaintiff provided express consent by operation of law according to FCC rulings. It is axiomatic that a plaintiff seeking class certification must establish standing to bring the suit by showing that he or she is a member of the proposed class. *Keele v. Wexler,* 149 F.3d 589, 592-93 (7th Cir. 1998). A plaintiff must possess the same interest(s) <u>and</u> suffer the particular injury shared by all members of the class. *Id. See also, McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) ("plaintiffs lack standing to seek - and the district court therefore lacks authority to grant - relief that benefits third parties."). Plaintiff cannot represent the class because he lacks standing to represent a group of individuals for whom CPA "cannot show that it had the consent of the called party to make such a call."

Plaintiff's counsel mentioned in an early discussion with CPA's counsel that his client sought to revoke his express consent that he gave to be called on his cell phone. As explained above, the FCC rulings are clear – CPA is permitted to call a cell number provided to the original creditor, Comcast, in regards to plaintiff's Comcast account[5]. Plaintiff should not, however, be permitted to use coy pleadings as a manner to attempt to force CPA to provide discovery on a class plaintiff cannot represent. Plaintiff has alleged that he represents a class of individuals that CPA called and cannot provide evidence of consent. CPA has provided evidence of express consent from the plaintiff. Plaintiff simply cannot represent this class as defined. He should not be permitted to cast

---

[5] While CPA obviously denies that the plaintiff can legally revoke his express consent, the issue has not yet been pled, and CPA therefore does not address it fully here.

130223765

a net wider than the facts of his own claim merely because he failed to plead all of the necessary facts.

As to the second point, the definition presents an improper "fail-safe" class – a class which would be bound only by a judgment favorable to plaintiff but not by an adverse judgment. The putative class definition precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class. *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980); *Genenbacher v. Centurytel Fiber Co. II, LLC*, 244 F.R.D. 485, 487-88 (C.D. Ill. 2007); *Brazil v. Dell, Inc.*, 585 F.Supp.2d 1158, 1167 (N.D. Cal. 2008); *Ostler v. Level 3 Commc'ns, Inc.*, 2002 WL 31040337, at * 2 (S.D. Ind. Aug. 27, 2002); *Heffelfinger v. Elec. Data Sys. Corp.*, 2008 WL 8128621, at *10 (C.D. Cal. Jan. 7, 2008); *see Chiang v. Veneman*, 385 F.3d 256, 272 (3d Cir. 2004).

Courts in this circuit and district have concluded that class definitions that require a threshold finding of liability are inadequate under Fed.R.Civ.P. 23(a). *Fletcher v. ZLB Behring*, 245 F.R.D. 328, 335 (N.D. Ill. 2006); *Alexander v. Q.T.S. Corp.*, 1999 WL 573358, at * 4 (N.D. Ill. July 30, 1999); *Ostler*, 2002 WL 31040337, at * 2; *see Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp.1162, 1169 (S.D.Ind. 1997). Plaintiff "has simply incorporated the language of the statutory prohibition into its class definition[s]." *Kenro,* 962 F.Supp. at 1169. The *Ostler* Court explained:

> The plaintiffs' original proposed class would have been an impermissible "fail-safe" or "one-way intervention" class because the definition based class membership on the ability to bring a successful claim on the merits. See *Isaacs*, [*v. Spring Corp.,*] 261 F.3d [679] at 681-82 [(7th Cir. 2001)]. Such a definition is inconsistent with Rule 23(c)(3), which provides in part that a judgment adverse to the class will bind all class members. *Id.,* citing *Amati v. City of Woodstock,* 176 F.3d 952, 957 (7th Cir. 1999).
>
> Where such a decision on the merits of a person's claim is needed to determine whether a person is a member of a class, the proposed class action is unmanageable virtually by definition. See *Noon v. Sailor,* 2000 WL 684274, *4 (S.D.Ind. March 14, 2000) (denying certification of class defined as any arrestee subjected to a strip search

9

130223765

> under circumstances rendering the search unconstitutional); *Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1169 (S.D.Ind. 1997) (denying certification where determining class membership would require individualized determination on the merits of each claim); *Indiana State Employees Ass'n v. Indiana State Highway Comm'n,* 78 F.R.D. 724, 725 (S.D.Ind.1978) (same); *Dafforn v. Rousseau Associates, Inc.,* 1976-2 Trade Cas. ¶ 61,219, 1976 WL 1358 (N.D.Ind.1976) (denying certification of proposed fail-safe class defined as all persons who paid illegally fixed brokerage fees); see also *Adashunas v. Negley,* 626 F.2d 600, 604 (7th Cir.1980) (affirming denial of class certification where class was unmanageable; determining whether any individual child was a member of proposed class would require extensive battery of educational and psychological tests).

2002 WL 31040337, at *2.

Here, plaintiff is seeking to define the class in terms of persons called in violation of the TCPA. Plaintiff has "simply incorporated the language of the statutory prohibition into its class definition." *Kenro,* 962 F.Supp. at 1169. The proposed class definition improperly requires a threshold finding of liability, and therefore is inadequate under Fed.R.Civ.P. 23(a). The class definition precludes the possibility of an adverse judgment against class members; the class members either win the alleged TCPA claim, or they are not in the class. If, for example, defendant proves that there was an emergency, or that prior express consent had been given (as with plaintiff), or that no automatic telephone dialing system was used, then defendant would be entitled to a judgment as to those persons. This Court, however, could not enter judgment against that particular person because he or she would no longer fit the class definition and would not be in that class. The proposed class is improper because the Court cannot enter an adverse judgment against members of the class. *Genenbacher*, 244 F.R.D. at 488.

10

**Conclusion**

WHEREFORE, defendant, CREDIT PROTECTION ASSOCIATION, LP, respectfully requests this Court grant judgment in its favor on the plaintiff's Complaint – Class Action, or, in the alternative to strike the class allegations, and for any other relief this Court deems fair and just.

Respectfully submitted,

CREDIT PROTECTION ASSOCIATION, LP

By: /s/Justin M. Penn
One of its Attorneys

David M. Schultz
Justin M. Penn
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Ste 300
Chicago, IL 60601
Ph. (312) 704-3000
Fax. (312) 704-3001

130223765